You may be seated. Ms. Lacey, you may bring your... yes. Good morning. May it please the court, my name is Sarah Lacey and I represent Daren Gadsden. This case is a bank fraud case, also involving counts of conspiracy to commit bank fraud, aggravated identity theft, and attempted evidence destruction. The case is slightly unusual in that the way that the government pled each count required proof, or we allege that it did require proof, as to, in each element, that PNC Bank and Bank of America were victims of the scheme to obtain property in the custody or control of each bank. It seems to be something the government has conceded, but is that the law? Well, I certainly believe so, that's what I wrote in the brief, and they did concede it. I do think that's the law, ordinarily it wouldn't be, ordinarily they could injunctively... Ordinarily, that's what I'm asking, ordinarily aspect of it. Exactly, that's what makes this... They really have to do that. They did not really have to do that, they did not. Then it isn't really the law, even though the government accepts a higher, more demanding burden. The district court pointed that out as well. It did, but counsel should be held to their considered tactical decision. The issue was raised in... And we should be held to the statute. You should, but I think that what happened in the trial court is not something that should just be ignored because it doesn't inert to the benefit of the government. They made their decision on the Rule 29 after the first oral argument on the Rule 29 motion and the deficiency was pointed out to them. They made their choice, and they should be held to that. It's always a difficult situation, but there are courts that have held that even when that occurs, when it comes on appeal, courts can rely on what the law is. I find it, I do think it's difficult because the courts aren't the prosecutors in the case. The prosecutors may have a tremendous amount of discretion as to what to do, and we only have the record before us, so it's confusing. Of course, on the other way, too, on that issue. So, I mean, but be that as it may, do you accept that there... I think probably there's a strong argument that a case against Bank of America alone would be difficult, but as to PNC, do you concede that at least they presented sufficient evidence as to PNC? Your Honor, I can't concede that. I don't concede that in part because I think there's certainly, there's evidence that they relied on. The evidence was insufficient as to PNC without having to concede it. Is there anything to show that evidence was insufficient? You had direct testimony on that. Well, and it was not relied on as a ground for the Rule 29 motion. It would have to be reviewed for plain error in this court, Your Honor. I do think that there's a major hole in their evidence with respect to PNC, which is that they essentially show that what the scheme, how it began, was comprised of essentially opening an account at PNC with false information. But there was not proof that the contract between the Keith Daughtry contracting LLC entity and the housing authority, this purported contract, that that was passed to PNC. So in other words, under United States v. Orr, this court held in 1991, that just merely having an account at a financial institution that is in some way, there's some false information related to the account. In that case, the account holder had opened it with a different last name. He was on the lam, and he opened this account with a different last name than his own. He deposited money, and then that case, of course, was just a bad check case. He wrote checks, and the bank eventually refused to honor the checks for insufficient funds. But the point of that case really as relevant here is that the mere fact, I think it's been held, that the mere fact that there's some false information regarding opening the account isn't ordinarily by itself enough that it's a material misrepresentation. Was it by itself here? Was that all there was here? As to PNC, I would argue that that was essentially all they had. The difference is, unlike in Orr, it was a bad check case. Here we have the additional complication of the ACH network, and the fact that as part of opening the account, you're clearly seeking access to the ACH network to facilitate the scheme. But I don't think that that shows that there was some additional material misrepresentation, which would be required prior to Loughran. So, again, moving on from PNC, I think if we take the, we have to take the predicate here that the government did have to prove all of the elements as to Bank of America, and as Judge Winn indicated, we certainly agree that that case as to Bank of America is very difficult, and in fact that they did not meet that burden as to Bank of America. Would the Court like me to address the standard of review issue before going into the substantive issue of Bank of America? I think you should proceed with your argument however you like. Thank you, Your Honor. Thank you, Your Honor. Of course, I'm sorry I haven't just said that. It did seem to me that there were a number of grounds that you left out of your Rule 29 motion. How are we to treat those? So, the issue there, and this comes up in the Chong Lam case that Your Honor decided, the distinction between that case and this case is that the grounds that were not raised in that case was as to an entire element of what had to be proved to uphold the conviction. The defendants had raised in their Rule 29 motion the element of intentionality, but not knowledge. And here, the Rule 29 motion has been based on the element. Well, you didn't challenge, what you did was to raise, my concern is a little different. I mean, you raised specific grounds in the Rule 29 motion, and you left out other grounds. Well, there has to be a question of where do you draw the line, what is specific. Well, if you don't assert the other grounds as a basis for the Rule 29 motion, haven't you weighed them? It depends on the grounds, Your Honor. That's what I believe Wallace says, Wallace and the Plain Error Standard, that if you, in the same way that there has to be some line as to cabining what is bank fraud, why wouldn't the cabining be around the grounds that you identified are not weighed, and the grounds that you didn't identify are weighed. Why isn't that a pretty clean line to draw? I agree that it is. But in this case, the grounds that were raised were the sufficiency as to Bank of America and the requirement of a proof of actual or potential risk of loss that Bank of America was exposed. And so, you believe that it captures the grounds that you would argue are subsumed under it. Yes, Your Honor, I would. And so, with that in mind, we argue that the Court should apply the ordinary standards of review to our arguments. Turning to the sufficiency of the bank fraud issue, I think we've made it very clear that the argument which was raised below, and we raise again here, is that as the case was fled, this Bank of America issue gets incorporated throughout each of counts 1 through 11. And if this Court does not find that the government sufficiently established that Bank of America was exposed to an actual risk of loss or a potential risk of loss, that you cannot sustain a conviction on any of counts 2 through 9, and that this also extends to the conspiracy. Why would that be, since a conspiracy count doesn't need a substantive count? It's true that it doesn't need a substantive count. So, why wouldn't it just be 2 through 9, not inclusive of the conspiracy counts, is what I'm asking. Your Honor, we submit that's because the conspiracy count is still conspiracy to commit bank fraud, which was still incorporated throughout the indictment, and that it was in the instructions. Defense counsel at trial did not request that risk of loss was included. It was specifically within the conspiracy instruction. But it was argued to the Court that the instructions can't be read in isolation from each other, and that risk of loss is incorporated in that way. Otherwise, the government unfairly gets to not have to prove the offense, the predicate offense. Not that there has to be a conviction, but they still have to prove it. But unfairly, because they're proving the predicate offense is defined by statute. Their burden is to prove the predicate offense is defined by statute. And I'm not quite sure why that doesn't apply, at least in the conspiracy charge, with respect to the predicate offense as defined by statute. Did you follow that rather convoluted question? I'm not entirely sure. I'm not entirely sure either. I think that the government had to prove they chose to pursue a violation under Section 1344, sub 2. So they had to prove what goes along with that violation. What they raised, what I understood them to raise, is that if they can prove conspiracy without proving a completed attempt or proving completed bank fraud, then why should they have to prove even a potential risk of loss? How could that be required? But I think that goes to whether the scheme is factually or legally impossible, essentially. How can you commit bank fraud if it's not reasonably foreseeable to you? Because, for example, suppose you know for a fact that the housing authority had in place that ACH block that we discussed in our brief that would prevent the evidence there seemed to show that the ACH block, which we didn't have that form in the record, but the testimony regarding what its effect would be, suppose you knew that that block was in place and that it was impossible for the bank to be placed at risk of loss, then I think you still have an issue with the conspiracy because of how it is incorporated, that it's still not bank fraud. So, turning to the aggravated identity theft issue, again, this is the incorporation issue. I think the main issue that I'd like to point out for the court is that, while you would not have to have the conviction on the predicate offense sustained, there's a difference between deficiency of the evidence review and saying that the effect of a verdict of acquittal or a judgment of acquittal as to whether or not the compound offense, in this case, aggravated identity theft, could be upheld, whether the conviction could be upheld. And the courts have clearly held that as to if there's a jury verdict of acquittal, the aggravated identity theft offense could stand. But that's not the case in sufficiency of evidence review. I think that's a point that's certainly not made clear in the government's brief. But when you examine the underlying cases, that is the case here, and that this court could find that both should be vacated, and the aggravated identity theft counts should fall if counts two and three fall. And turning briefly to the attempted evidence tampering arguments, I think it's a rather novel argument. The government can't point to any authority holding that the mere deletion of an email account, an account itself, whether that account actually constitutes a record, document, or other object, they haven't pointed to that authority, and they also don't have evidence in the record that would allow the jury to do, the jury could only speculate as to whether or not there was email that would be relevant in those accounts. Well, I guess we're taking the evidence in the light most favorable to the government. Yes. And within a few days of the agent informing Gadsden that he wanted to question Gadsden, the Gmail accounts DKG Credit One and James Fisher Consulting were deleted. Correct. And there was evidence that these accounts were associated with the bank fraud from which a reasonable juror could infer that they were related to the bank fraud scheme. And in that, DKG Credit One was used as the contact email for the fraudulent Gerald Netspend card, and James Fisher Consulting was used as the contact email for the Fisher Netspend card and the Fisher LLC equity, both of which were fictitious entities set up for purposes of the funds. And then you had a Google employee say, testify that the IP address used to log on to the email account matched the IP address used to log on to Gadsden's personal email address. Why is that not enough from which a jury could infer that Gadsden used the emails to perpetrate the fraud combined and were likely to include incriminating evidence given the temporal connection between the FBI contact and their deletion? Very briefly, Your Honor. There's no temporal connection between the emails that were testified to as having been sent from Netspend, which were sent over a year prior to the deletion. But why is that? But the question is, I'm not quite sure what difference that makes. There is a temporal connection between the contact and their deletion, regardless of how they were used prior to that, because it's the deletion that would be the evidence tamper. Otherwise, I think that argument extends to the possibility that anyone could delete an email account at any time, which would require still finding that it's a record document or object. No, it doesn't. Can you slow down and let me finish? Yes. It simply means that on these facts, after you have been put on notice that you're being investigated for bank fraud, to delete emails involving entities that were allegedly associated with that fraud is something from which a jury could draw an adverse inference. That doesn't open evidence tampering up quite as broadly as you have painted it, does it? I agree with the premise. Certainly, this can be established by circumstantial evidence. But the disagreement we have is that we think there wasn't enough for the jury to find, that those emails were there to be deleted. Thank you, Your Honor. Thank you. Oh, I'm sorry. Thank you. And you have some time for rebuttal. Good morning. Thank you very much, Judge Duncan. May it please the Court, my name is Sujit Raman. I'm the Appellate Chief for the District of Maryland, appearing on behalf of the United States. Your Honors, I'm happy to sort of go through the issues in the way that they were posed. Yes, Your Honor. I have a specific one. Yes. That you are welcome to address in any order that you wish, but I would like for you to give me or give the Court your best, your synopsis of your best evidence on risk of loss for Bank of America. I think the... At some point in your... I'll get right to it, Your Honor. I think there are three bases, really. The first is Mr. Hirsch's testimony at trial, and this is found at page 79 of the joint appendix. In response to the prosecutor's question of, well, tell the members of the jury about what happened in this case, Mr. Hirsch said, in September 2010, I was made aware of a situation from our ACH department, and this is the key point here. They notified me that a customer of ours, that is, Daughtry LLC, was going to receive returns from Bank of America. It was large dollars, approximately $1.3 million, that was going to be returned. Now, that testimony, when taken within the broader context of Mr. Hirsch's testimony, as well as the actual facts of what happened in this case, makes it clear that PNC Bank returned $1.3 million back to Bank of America. Now, the reason why that support... Yes, Your Honor. I'm sorry. Oh, I'm sorry. The reason why that supports a finding of risk of loss to Bank of America is that the jury could reasonably have inferred that, but for that money being returned to Bank of America, Bank of America would have been out of that money. They would have been left holding the bag, so to speak, and thus that was a risk of loss to Bank of America. So that would be the primary and the first basis. It also, now that you point me back to that testimony, I think the district court found that it also implicated PNC's exposure because Hirsch testified that PNC had not been liable for all of the $1.4 million because it had been able to recover some back. That's exactly right, Judge Duncan, and that's my second point, which is the amount of money taken out of the Housing Authority account at Bank of America was about $1.399 million. PNC Bank ultimately was victimized for $1.1 million. So the delta there is unaccounted for, and the reason it's unaccounted for is because, as Mr. Hirsch testified, and this is at page 188 of the joint appendix, that PNC recovered money from the banks where the ACH transfers had been sent. The primary, the number one recipient of funds from that fraudulent Daughtry account was MetaBank, which is that net spend account. But the second entity that received over $300,000 from that Daughtry LLC account was Bank of America, a quarter million of which went into that Fisher Consulting LLC account, which Mr. Gadsden had opened earlier in the scheme and was part of his bank fraud. I'm sorry to interrupt. Not at all. But it implicated another question I had, and you concede that the restitution amount should be reduced to the $1.1 from the $1.4? Yes, Your Honor. In fact, the government at sentencing advocated for $1.1, and I think we all just missed it. So I do think the case needs to go back to the District Court purely for a ministerial correction of the judgment. There should be no new sentencing proceeding or anything of that sort. So that would be the second basis, Your Honor, for why Bank of America was at a risk of loss. The third, and I think there is an implicit notion of a risk of loss to Bank of America here, because at the end of the day, the housing authority was a Bank of America client, and just in the very same way that PNC Bank was on the hook for the sort of illegal activities related to the Daughtry LLC, I think that the jury could reasonably have inferred that Bank of America could be on the hook because, remember, the Fisher LLC was a Bank of America client. So in the same way that the financial institution can be on the hook when one of its customers is an instrumentality of a fraud, I think the jury could reasonably have inferred that Bank of America. So for those three reasons, I do think the government met its burden to prove a risk of loss. What were the misrepresentations that were made to Bank of America so as to naturally induce them to do these funds under the law? Yeah, under Lofgren. And, Your Honor, I want to answer that question, but let me just back up one second. Lofgren, there's no dispute that Lofgren controls in this case in the sense that it is an opinion of the Supreme Court decided when this case was on direct appeal. So under Henderson v. United States, which I apologize, we actually didn't cite it in our briefing, but no dispute that under Henderson, Lofgren applies to this case in a sort of theoretical sense, right? Give me the misrepresentation. Yeah, of course. Sorry, Your Honor. Let me get right to it. The misrepresentation to Bank of America occurs in a couple different ways. The first is every single time that Mr. Gadsden illegally debited funds out of the housing authority's account at Bank of America, he was making an implicit yet overt misrepresentation. He was acting under the false pretense that he was entitled to that money. So starting at the top, we adopted misrepresentations here in this circuit. Well, I do think it's not really implicit misrepresentation, it's false pretense. He's making an affirmative false pretense to Bank of America that I, that is, Keep Daughtry LLC is a legitimate company that has rendered services to Bank of America and that it's entitled to every single one of these unauthorized debits. Doesn't the concept imply misrepresentation that he's doing it? He's doing it on behalf of Keep Daughtry. Therefore, I'm in part representing him in this. Well, I don't want to get caught up on that, Your Honor. I think the court can see it as implicit or explicit. I mean, the fact of the matter is he's taking money out of that account under the false pretense that he's entitled to it. So whether that's an implicit misrepresentation or an explicit misrepresentation, either way, it's certainly a materially false pretense, which is the language of the statute. Certainly, I think it meets that standard. That's my first point. My second point, and I think this is a deeper point, I don't want to get too far into the weeds, but I think it's important. One of the pieces of evidence in this case was Government's Trial Exhibit 56, and it's at Joint Appendix 1786. This is the fraudulent ACH authorization form that Mr. Gadsden submitted to First ACH, which is that third-party payment processing system during the Fisher Consulting part of the scheme, the second iteration, the $8,000. Page 1786 of the Joint Appendix, you'll see that Mr. Gadsden submitted a form on behalf of the Baltimore Housing Authority. He steals the name of the chief financial officer, Ms. Lynn, signs it, uses his own phone number as the contact number. This form is then passed along. First ACH relies upon this form to then take debits out of the Housing Authority's account at Bank of America. So this is an affirmative misrepresentation that he is Rainbow Lynn, the CFO of the Baltimore Housing Authority, which is then passed through to Bank of America by First ACH to take that money, to authorize this is a $3,000 debit. That would be the false representation, Your Honor. Under law, it doesn't have to be made directly to the bank. It has to have a relational component to the bank. There has to be a reasonable probability that that false material misrepresentation will be conveyed to a federally insured bank. So ACH transfer be considered a misrepresentation? Well, I think the pretense under which the money is taken out of the account can be a misrepresentation, and we've cited cases in our brief. Morgenstern is a Second Circuit case. Briggs is a Fifth Circuit case where the implicit misrepresentation, the implicit authority of somebody to take money out of an account where they say, oh, yeah, I'm entitled to take this money, but in fact they're not, is considered a material misrepresentation under 13. What's the evidence that it was conveyed to Bank of America? What evidence did you put on that? No, no, I think the fact that the money came out of the account is certainly a- No testimony? Well, I don't think we needed the testimony, Your Honor. You put some in the first trial? We did, we did. You didn't do it in the second trial? No, we didn't, and there was a strategic reason for that. The witness, you didn't do it. Correct, Ms. Lynn, correct. So Ms. Lynn actually testified at the first trial. But you don't have that evidence of that Bank of America connection in the second trial, whereas in the first trial it was in there. Respectfully, Your Honor, I would just- You had a reason for doing it, so what was it? Oh, no, the reason was the first case went two weeks and it hung, and we spoke to the jurors after, and I don't want to get too far into this. We spoke to the jurors afterwards, and they thought it was 11 to 1, and the one juror who was noncompliant just wasn't very cooperative, but her basic point was it's too long and it's too confusing, and I don't get it, so I'm not going to- So you cut out a witness there that- Well, we cut out several witnesses. Bank of America with the ACA. Well, Ms. Lynn was the chief financial officer of the Housing Authority, and again, really everything that we needed from her I think is encapsulated in this document, which was certainly entered into evidence in the second trial, and again supports a finding of a material misstatement. Again, this is Mr. Gaston. The jury found beyond a reasonable doubt that he's the guy who actually did this. He must have known that this information would be conveyed to Bank of America because the whole point of getting a third-party payment processor is to get them to make the debits out of the Housing Authority's account at Bank of America. So it's your position that that initial-the term false pretense is very annoying. I think it should be a truth, not a double negative, but that it flows through all of the journals of the ACH back through payment? Yes. I think when a person like Mr. Gaston is illegally debiting money out of an account, he knows he's not entitled to it, and not only does he know that, and this isn't an accident, he has set up fraudulent enterprises, particularly to steal money out of this Baltimore Housing Authority account. In that particular factual context, clearly it is at least an implicit, and again, I would say, Your Honor, I think there is an argument that it's an explicit misrepresentation. Every single time that- But the problem-I'm following you on that, but it is a factual statement, but it is a bunch of conclusions. He is doing these things. He's done that, but you haven't pointed specifically to connect those things that he's done. The evidence that shows that this happened, you've got this third party involved, you've got ACH involved, you've got money moving, and I agree, there's something bad going on, you've got to connect those things, and lawfully, I don't know how you-it does narrow misrepresentation to some extent, and I don't know how you get around that. I think you've got to address that. I think you have to address the misrepresentations, and even though you want to characterize the fact that implied misrepresentations are false pretense, well, that's the whole scheme of things, but if implied misrepresentations on a law firm, I'm not so sure it survives. Well, let me say it two different ways, Your Honor. Of course, law firm was never-law firm, while it applies in general terms to this case, the defendant never asked for the misrepresentation instruction that the court is suggesting now, and that's waiver. He requested a particular jury instruction in this case, which was any materially false misrepresentation in furtherance of the scheme, so it doesn't even have to be to Bank of America, and I think our Rule 29 response addresses this in substantial detail. The law in the Fourth Circuit before law firm was that any materially misrepresentation in furtherance of a bank fraud scheme is enough to satisfy that element, and again, this was never raised below. The first time we hear about it is in his opening brief in this court, which under the Chong Lam principles that we've talked about earlier is waived, and so he has waived the idea that law firm somehow applies to his particular case. Law firm had been decided. No, but he could have been law firm, right? He could have been the same defendant in law firm who raised the argument. He did it in the first instance, so he now has to ask for something that the Supreme Court hasn't even told him. No, I don't think that's right, Your Honor. I think when he asked for his jury instructions, he certainly could have made the argument that lawyers have made in other cases that no. Tell me why is your conceding both this Bank of America and PNC, and is that really the law as we discussed earlier, and yet you conceded it not only there, but you conceded it before us right now? Well, in candor to the court, here's the way that we have always seen this case. It was a single integrated fraud scheme. Tell me why you are conceding that now. Well, I'm happy not to concede it. Well, I know you are happy to concede it now because it's quite clear you shouldn't have done it. You shouldn't have done it then because it wasn't the law then, and it's not the law now, but you've conceded it, and you've spent a lot of time arguing Bank of America, but if you hadn't done that, you'd be talking PNC right now. That's right. And PNC is probably much a good lock on this case. That's a clear winner. Let me do my best, Your Honor, to try to answer your question. I don't know how you're going to do it, but it's going to be interesting to hear. Well, let me do my best, which is that the way that we had conceived of this scheme from the very beginning was, as I say, a single integrated scheme to get money out of that account at Bank of America under the custody and control of, you know, Bank of America. The way he did it was a sort of integrated scheme. First, take the money out of the Housing Authority account and put it into this Daughtry LLC account, and then from there funnel it out into 54 different debit card accounts, into different bank accounts. You know, I'm not so sure that it differs from any other type of situation when you have multiple banks involved, but the law is that you need to prove one and not both. That's all I'm asking. I mean, I understand the fact. The way he did it is still fuzzy to me. And I'm not so sure you've explained it clearly here, how this actually happened and what actually did go on. But this whole business of conceding that, it was just wrong. I mean, I don't know why you did it, and I don't know more particularly why you're doing it here and why did you argue here that, you know, some circuits have said, well, that stuff down below, you've got to follow the real law. You haven't argued that. Yeah. Well, like I said, Your Honor, I... Why? Well, again, we have always seen this as a single scheme with two banks that were, I don't want to say victimized because, again, in the law firm, really that's not the right term, but two banks that were used as sort of unlawful instrumentalities of the offense, which is why we put in the Bank of America FDC certification, right? I mean, if we were being strategic about it and wanted to just come up here and say, well, no, it's just the one bank, we never would have proven the FDIC certification status for both banks. So, again, our theory from... And maybe we're wrong about it. Let me ask another question. You've not argued that the Supreme Court's decision in law can be applied retroactively? No, it can be, absolutely. You didn't argue it in the brief? Well, I think we conceded... Our argument in the brief was first that he waived it, right? And I think that really needs to be the primary basis of decision. He did not ask for the jury instruction. He, in fact, affirmatively asked for a different instruction, which is any material misstatement in furtherance of. And I think we've easily met that burden. But the second question then becomes, we then say, assuming a plain instructional error, and, again, maybe I should have dropped a footnote to Henderson, but that's what I was trying to convey, Your Honor, is even assuming a plain... We're not saying that, you know, there was no error and that it wasn't plain. Assume a plain error because law firm does apply if he hasn't waived it. Now, again, I think he's waived it, and I don't want to sort of over-emphasize that point. Assuming a waiver, putting aside a waiver, law firm does apply. There's no dispute about that. That's exactly what I said. You didn't argue that in your brief. But, you know, be that as it may, do you call any witnesses from Bank of America in this setup? No, we did not. And neither did we have... We did the first time. No, we didn't, Your Honor. No, no, no. There was no... Do witnesses connect Bank of America regarding what has occurred in this state? Well... Yeah, you've got to prove based upon what you can see. Bank of America. Yeah. And the way we proved it was Mr. Hirsch's testimony. I thought that was your argument. Whether it's... Whether it flies or not, your argument is that Mr. Hirsch tied both... That a jury could infer from Mr. Hirsch's testimony. And that's your argument. Yeah, well, and... Sure it is, but that's implied misrepresentation. That's not been adopted in this circuit. To some extent, law... No, it's not implied misrepresentation, Your Honor. We're just talking about... And I should really emphasize this. And this is getting back to the Chong-Lam principle. You know, Mr. Gadsden raised particularized claims in his Rule 29 motion. Your Honor, he never questioned the misrepresentation element. He waived it. He said, the only issue I have in this case is risk of loss. So when he doesn't raise it in his Rule 29 motion, Your Honor, it is waived under Chong-Lam. And, you know, this court and seven other circuits have held that. So I don't think this court even needs to get into the misrepresentation idea on sufficiency grounds, because he waived it. Now, we're up here just on a risk of loss question. Focusing on the risk of loss question is that I've pointed out three reasons why I believe, again, I think the jury's finding was reasonable here, for why Bank of America had a risk of loss in this case. So I don't want to get hung up, Your Honor. I appreciate the questions, and I think they're important questions, particularly since law has been decided, and it did change the law in a number of circuits. But this case... It's a very important question. I don't want to dispute where you're going with it. I mean, just a concession from the mechanic is enough to throw you off right there. Why in the world did the government do that? Why do you try this case in this way? You know, just given the manner in which it was just a clear vehicle to get this conviction, now we have to argue all this, you have to allow a point of waiver and all kinds of other stuff to get to a case that could be a threat. I don't dispute the fact, Your Honor, that, again, I've represented to the court how we have seen this case. I respect the fact the court might disagree, and frankly, if we took on a higher burden than we need, you know, I regret that. I certainly disagree. We both disagree. You and I both agree on that, that you took a burden that you shouldn't pay. Right. Well, I can answer the question. You know, you're saying it in a very nice, elegant way, but the bottom line is it comes down to you just screwed this case up. Well, I disagree with that, Your Honor. When you come to conceding something you didn't have to concede when the method of proving it is right there in front of you. Right. Well, look, I tried this case, so I'm happy to sort of tell the court what was in the prosecutor's mind. You know, when we first had the jury instruction conference, you know, I got up and said, I don't need to prove two banks. I only need to prove one. And I'll tell you, we thought about it, and I didn't want to come up here and lose the case because I didn't prove a second bank, because we do name both banks in the indictment, right? And there is a sort of two-wit argument. You know, when specific entities or specific, you know, drugs or specific firearms are named in an indictment, there is a... I'm going to accept your answer. You have an answer, and it is not going to be in a concession beyond the answer you keep giving me, which is I understand. And I don't want to over-criticize you on it because it's a difficult case, but that's a very simple thing that happened in this case. It makes this now a very difficult case to deal with. Well, I understand, Your Honor. Respectfully, you know, again, obviously I'm an advocate here. I don't think it's that difficult. I think the evidence is sufficient to support both a risk of loss finding to Bank of America and an actual loss finding to PNC Bank. I do want to touch on some of the other issues. I do think the waiver issues are important, Your Honor. It's not just a technicality. Waiver rules are significant for the very reasons that a number of courts have pointed out. You know, there's some analog here to Rule 12 of the Federal Rules of Criminal Procedure. If a defendant wants to dismiss an indictment or suppress evidence, he has to move before trial under Rule 12b3. And if he doesn't do it, it's waived. It is absolutely waived. So if the indictment is flawed or if the police acted blatantly unconstitutionally and yet if he doesn't move to suppress, that argument is waived. And there's a reason for that. There's sort of policy implication here that there has to be orderly prosecution. There has to be sort of a fair way of dealing with these issues. And I think the waiver rule is kind of, in the Rule 29 context, is an analog to that. If you have a basis, there's no compulsion for a defendant to file a Rule 29 motion covering everything. He can make a general objection, and all of his objections are preserved. But when a litigant gets up and actually specifies particular grounds, he needs to be held to them. And as I say, in this case, it actually led to a factually erroneous ruling. The district judge relied upon the argument that money was going one way better than the other and issued a legal ruling that was factually flawed. And that's how we were prejudiced by that. I'm sorry, Your Honor. Well, your time has expired. Do you want to finish your sentence? I have nothing more to say. If you want to finish your sentence. Nothing further, Your Honor. Thank you. Thank you very much, Mr. Rahman. Ms. Lacey, you have a few moments for rebuttal. Speak to waiver if you will, Ms. Nishin. Yes, Your Honor. I think the waiver issue can be understood in a couple of different ways, the question of what is waived. I'm hearing Mr. Rahman argue now that perhaps Mr. Gadsden should have somehow raised the two-bank issue before trial or sometime earlier than the Rule 29 motion. I think that's really neither here nor there given the argument that we've had in his brief. Where below did the appellant raise the misrepresentation and the issue and the materiality? Where? I don't see it anywhere. In the Rule 29 motion, you mean where in there or? Anywhere below before now. I think that it was, I don't think it was separately raised. Okay. I think that it's incorporated in the sense of how are you showing that Bank of America was put at a potential risk of loss. Well, the only issue that you discussed, I came to this thinking that the issue that you had preserved was risk of loss. And I'm trying to understand your argument about how we would know that it would now seem to characterize it. The risk of loss. It has to be shown in some way. I think it's Judge Commons. Yes. Yes. And I think Judge Wynn's comments are very. But that's not the only. Your risk of loss argument does seem to be preserved. It's this second, this other argument about the materiality elements and the misrepresentation that you can't just preserve by this broad-based argument. So where did you specifically raise that or appellant specifically raise that below? Your Honor, I wish I could recall a page from the record for you to cite that, but I think that the way around that that we've suggested to the court is that it can still be reviewed for plain error. And that is a significant issue here when it ties to the overall sufficiency of the evidence and the particular unusual circumstance of this case, which perhaps will never be repeated. There's no reported cases either where the government has pursued this strategy. And we can expect that perhaps in the future. But I think it is a fair case to raise the plain error issue, especially because of Loughran in between and the unfairness that would be to Mr. Gadsden by the fact that his counsel did insist on materiality as being part of the instructions, but he couldn't have anticipated what the Supreme Court would do in June of this past year, well after his, a year after his trial. And to, if I may briefly address Hersh's testimony, the government has really, has not shown any way that Hersh had any basis to be able to testify as to what happened or not with Bank of America. And he didn't. His testimony was at best ambiguous. He said PNC was able to recoup some $300,000, but he says from other banks. And he wouldn't say where it came from. There was cross-examination on that point. He wouldn't say where it came from. And that testimony is insufficient to say what necessarily came from Bank of America when the government clearly could have put on a witness from Bank of America if it chose to, and it chose not to do that. I think it's also there's a bit of inflation between what a bank was, what amount a bank was victimized for versus what the amount of restitution would be. PNC, I think the argument is that the entire amount of money that anyone is talking about, everyone agrees $1.4 million, but is PNC somehow only victimized for 1.1 because it received an amount back? That I think is not what's supported in the case law. It would be 1.4. And in the same way for Bank of America, it would have to be 1.4 that you would have to prove. So you think that the restitution order should have been 1.4 instead? No, I agree that it should certainly be 1.1, and that's what I raised initially in our brief. Right. So a restitution is separate from this issue of how was the bank victimized? What was the effect of the scheme in victimizing the bank? I think it goes as well to just the lack of clarity in Hersh's testimony at all. Ms. Lacey? Yes, Your Honor. Your time has expired. Do you wish to summarize? Yes. I merely wanted to say the government has not shown that an ACH transfer can be a statement, and that is something that the court should look at and not ignore the overall rules of the bank, of the ACH network, and how they operate. Thank you, Your Honor. Thank you. We will ask the courtroom deputy to adjourn court. Sign and die, I guess. And then come down and recount.
judges: Allyson K. Duncan, James A. Wynn, Jr., Stephanie D. Thacker